LAW OFFICES OF JOSEPH M. ALIOTO
JOSEPH M. ALIOTO (CA Bar No. 42680)
THOMAS PAUL PIER (CA Bar No. 235740)
1 Sansome St., 35th Floor
San Francisco, CA 94104
Telephone: (415) 434-8900
Facsimile: (415) 434-9200
tpier@aliotolaw.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ERIC STETZLER,<br><br>              Plaintiff,<br>v.<br><br>UNITED AIRLINES, INC.; AMERICAN AIRLINES, INC.; DELTA AIR LINES, INC.; SOUTHWEST AIRLINES CO.; and AIR CANADA,<br><br>              Defendants. | CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Eric Stetzler, demanding trial by jury, complains and alleges as follows:

I. NATURE OF THE ACTION.

1. This action arises out of a combination and conspiracy by the four largest commercial airlines in the United States – United Airlines, Inc., American Airlines, Inc., Delta Air Lines, Inc., Southwest Airlines Co.- and Air Canada (collectively "Defendants"). The combination and conspiracy began no later than February, 2013 and more probably as early as 2008, and continues to the present (the "Class Period"), the intent and effect of which was to fix, raise, maintain, and/or stabilize prices for air passenger transportation services within the United States in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1 and within the District of Columbia and Puerto Rico in violation of Section 3 of the Sherman Antitrust Act, 15 U.S.C. § 3 by, among other actions, colluding to limit seat capacity, cutting flights, limiting availability, and using smaller aircraft.

II. JURISDICTION AND VENUE.

2. This complaint is filed under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages, to obtain equitable relief, including costs of suit and reasonable attorneys' fees, and for violations of Sections 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1 & 3. The Court has original federal-question jurisdiction over the Sherman Act claims asserted in this complaint pursuant to 28 U.S.C. §§ 1331 and 1337 and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

3. Venue is proper in this District pursuant to Sections 4(a) and 12 of the Clayton Act, 15 U.S.C. §§ 15 and 22, and 28 U.S.C. § 1391(b), (c), and (d) because Defendants reside,

transact business, are found and/or have agents within this District, and a substantial part of the events giving rise to Plaintiff's claims occurred in this District and a substantial portion of the affected interstate trade and commerce described below has been carried out in this District.

4. This Court has personal jurisdiction over Defendants because, inter alia, each: (a) transacted business in this District; (b) directly sold and delivered passenger air transportation in this District; (c) has substantial aggregate contacts within this District; and (d) engaged in an illegal price-fixing conspiracy and agreement to limit capacity that was directed at, and had the intended effect of causing injury to, persons and entities residing in, located in, or doing business in this District.

III. INTRADISTRICT ASSIGNMENT.

5. Intradistrict assignment in the San Francisco Division is appropriate. The practices at issue adversely affect air passengers who reside in this division and paid airfares, baggage fees and cancellation and change fees to Defendants. Antitrust class actions involving claims of fare and/or fuel surcharge price-fixing by airlines have previously been filed in the San Francisco Division and were or are being presided over by The Honorable Charles R. Breyer. See, *In re Transpacific Passenger Air Transportation Antitrust Litig.*, MDL No. 1913, No. 07-cv-5634-CRB (N.D. Cal.); *In re International Air Transportation Surcharge Antitrust Litig.*, MDL No. 1793, No. M-06-1793 CRB (N.D. Cal.).

6. Additionally, multiple anti-merger cases involving all but one of the Defendants have been filed in the San Francisco Division pursuant to Section 7 of the Clayton Act, 15 U.S.C. § 18, and Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. See *D'Augusta et al. v. Northwest Airlines Corporation and Delta Airlines, Inc.*; *Malaney et al., v. UAL Corporation, United Air Lines, Inc. and Continental Airlines, Inc.*; *Taleff et al., v. Southwest Airlines Co., v.*

*Airtrans Holdings, Inc. et al.*; and *Fjord et al. v. American Airlines, US Airways Group, Inc. et al.*.[1]

## IV. PLAINTIFF.

7. Plaintiff, Eric Stetzler, is a resident of San Francisco, California. During the Class Period, Plaintiff purchased air passenger transportation services directly from one or more of the Defendants and has suffered pecuniary injury as a result of the antitrust violation alleged herein.

## V. DEFENDANTS.

8. United Airlines, Inc. ("United"), a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 233 South Wacker Drive, Chicago, Illinois, 60606, is hereby named a defendant herein. United conducts air passenger transportation services throughout the United States, including within this District. In 2011, United merged with Continental Airlines, Inc., a significant rival, in a non-trivial transaction valued at over $1 billion.

9. American Airlines, Inc. ("American"), a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 4333 Amon Carter Boulevard, Fort Worth, Texas, 76155, is hereby named a defendant herein. American conducts air passenger transportation services throughout the United States, including within this District. In 2013, American merged with US Airways, Inc., a significant rival, in a non-trivial transaction valued at over $1 billion.

---

[1] The latter case was subsequently transferred to the United States Bankruptcy Court, Southern District of New York.

10. Delta Air Lines, Inc. ("Delta"), a corporation organized and existing under the laws of the State of Delaware, with its principal place of business located at 1030 Delta Boulevard, Atlanta, Georgia, 30354, is hereby named a defendant herein. Delta conducts air passenger transportation services throughout the United States, including within this District. In 2008, Delta merged with Northwest Airlines, Inc., a significant rival, in a non-trivial transaction valued at over $1 billion.

11. Southwest Airlines Co. ("Southwest"), a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 2702 Love Field Drive, Dallas, Texas, 75235, is hereby named a defendant herein. Southwest conducts air passenger transportation services throughout the United States, including within this District. In 2011, Southwest merged with Airtrans, a significant rival, in a non-trivial transaction valued at over $1 billion.

12. Air Canada ("Air Canada"), a corporation whose principal place of business is 7373 Boulevard de la Cote-Vertu, Saint Laurent (Quebec), Canada is hereby named as a defendant. Air Canada conducts air passenger transportation services throughout the United States, including within this District.

VI. UNNAMED CO-CONSPIRATORS.

13. Various persons, firms, corporations, partnerships, and other entities, currently unknown to Plaintiff, participated with Defendants in the unlawful restraints of trade alleged herein. When the identities of these currently-unknown co-conspirators become known, Plaintiff will amend this complaint to add them as Defendants. All averments herein against Defendants are also averred against these unnamed co-conspirators.

## VII. AGENTS.

14. The acts alleged to have been done by Defendants were authorized, ordered, or performed by their directors, officers, managers, agents, employees, or representatives while actively engaged in the management of Defendants' affairs.

## VIII. NATURE OF INTERSTATE TRADE AND COMMERCE.

15. Throughout the Class Period, there was a continuous and uninterrupted flow of invoices for payment(s) and other documents essential to the provision of air passenger transportation services transmitted in interstate commerce between and among offices of Defendants and their customers located throughout the United States.

16. During the Class Period, Defendants transported substantial numbers of passengers, in a continuous and uninterrupted flow of interstate commerce, between various airports in the United States.

17. Throughout the Class Period, Defendants' unlawful activities, as described herein, took place within and substantially affected the flow of interstate commerce and had a direct, substantial and reasonably-foreseeable effect upon commerce in the United States.

## IX. FACTUAL ALLEGATIONS.

18. Defendants American, Delta, United, and Southwest are the four largest providers of air passenger transportation services in the United States. These defendants provide air passenger transportation services on routes between hundreds of cities within the United States.

19. The domestic airline passenger industry is an oligopoly. Due to a series of mergers, particularly since 2008, United, American, Delta, and Southwest now control approximately

86% of the domestic air passenger seats. During that period, they have taken steps to limit capacity growth in order to keep airfares artificially high.

20. The average domestic airfare rose 13 percent from 2009 to 2014, according to data from the federal Department of Transportation's Bureau of Transportation Statistics. Defendants also began collecting new ancillary fees, such as $25 each way to check a first bag (and up to $35 to check a second or more bags), overweight baggage charges of up to $100, and $200 to change a reservation.

21. Partially as a result of the foregoing, the industry has earned record profits. In the past two years, United States airlines earned a combined $19.7 billion in revenue. The International Air Transport Association ("IATA") is predicting net after-tax profits for North American airlines of $13.2 billion, which exceeds the peak reach in the 1990's.

22. Jet fuel is more than one-third of the operating cost of a typical airline. Consequently, 2015 was especially profitable for the airlines because of a significant decrease in the price of crude oil. Crude oil prices dropped from approximately $116/bbl in April of 2011 to approximately $30/bbl today. It has been estimated that in April of 2015, United States airlines paid $1.94 per gallon for jet fuel, a decrease of 34% from the previous year. Nonetheless, American's CEO Douglas Parker stated publicly that it was his intention to continue to set fares as if oil costs were still $100/bbl.

23. Another reason for the exceptional profitability of the airlines today is because of the tsunami of mergers and consolidations that have swept the domestic air passenger industry in recent years, leaving only four major players in control of approximately 86% of the market for passenger travel within the United States.

24. Airlines closely watch each other's fares and match each other's fare increases. Additionally, the Defendants use "cross-market initiatives" (CMIs) to deter fare wars. A CMI

occurs where two or more airlines compete against each other on multiple routes. If an airline offers discounted fares in one market, an affected competitor often responds with discounts in another market – a CMI – where the discounting airline prefers a higher fare. CMIs often cause an airline to withdraw fare discounts.

25. The United States also noted direct communications among airlines on airfares. It gave the following example:

> US Airways also has communicated directly with a competitor when it was upset by that competitor's efforts to complete more aggressively. In 2010, one of US Airways' larger rivals extended a "triple miles" promotion that set off a market share battle among legacy carriers. The rival airline was also expanding into new markets and was rumored to be returning planes to its fleet that had been mothballed during the recession. US Airways' CEO [Douglas Parker] complained about these aggressive maneuvers, stating to his senior executives that such actions were "hurting [the rival airline's] profitability – and unfortunately everyone else's." US Airways' senior management debated over email about how best to get the rival airline's' attention and bring it back in line with the rest of the industry. In that email thread, US Airway' CEO urged the other executives to "portray [] these guys as idiots to Wall Street and anyone else who'll listen." Ultimately, to make sure the message was received, US Airways' CEO forwarded the email chain – and its candid discussion about how aggressive competition would be bad for the industry – directly to the CEO of the rival airline. (The rival's CEO immediately responded that is was an inappropriate communication that he was referring [sic] to his general counsel.)

26. The DOJ ultimately settled their case to enjoin the merger of defendants American and US Airways, despite vigorous objections that the settlement was completely and totally inadequate, and settled none of the major issues originally claimed by the United States, including the understandings among Defendants to "discipline capacity." The DOJ allowed the merger to occur, conditioned on the divestiture of certain flight slots. The merger has since been consummated, resulting in significant further consolidation in the market for air travel in the United States.

27. In addition, Defendants have had and continue to have ample opportunity to meet, exchange price and capacity information, and collude on prices and capacity. Among the

venues utilized by the Defendants for such activities are the Airline Tariff Publishing Company ("ATPCO"), a dedicated price-exchange network for the industry; regular meetings held by the International Air Transport Association, an international trade body representing over 240 domestic and international airlines ("IATA"); the Airline Reporting Corporation ("ARC"), jointly owned by Defendants among others; Airlines for America, a trade group to which Defendants belong; and the "Conquistadores Del Cielo"( the "Conquerors of the Sky") described on one website as a "gathering [of] corporate leaders in the west and annual meetings in N.Y. [to] enjoy friendships and camaraderie. Today, Conquistadores Del Cielo is often referred to as 'the Aerospace Olympus.'" Executives from the Defendants have also attended multiple private meetings at each other's offices, and have exchanged one-another's private telephone numbers.

28. The new order created by these mergers resulted in reduction of capacity while airfares soared. After United announced a $2 billion profit in 2014, Jeff Smisek, then-CEO of United, was quoted in a January 2015 article stating, "[w]e will absolutely not lose our capacity discipline …. It's very healthy for us and very healthy for the industry."

29. On May 20, 2015 Gary C. Kelly ("Kelly"), the CEO of Southwest, announced a break in this industry front, saying that Southwest planned to increase its capacity by as much as eight percent by acquiring two new gates at its hub at Love Field, Dallas. Industry reaction was swift. On June 7-9, 2015, IATA held its Annual General Meeting in Miami, Florida. Chief executives of many of the leading passenger airlines were in attendance. During the course of that meeting, several of them spoke publicly about the need for 'discipline" within the industry. Delta's president, Ed Bastian, said that Delta is 'continuing with the discipline that the marketplace is expecting." American's chief executive, Douglas Parker, stated that the airlines had learned their lessons from past price wars: "I think everybody in the industry understands

that." Air Canada's chief executive, Calin Rovinescu, echoed these sentiments, saying, "[p]eople were undisciplined in the past, but they will be more disciplined this time."

30. These pronouncements by airline executives and the pressure placed on Southwest at the IATA annual General Meeting had the desired effect. A June 11, 2015 New York Times article reported that "after coming under fire at this week's conference, Southwest quickly moved to reassure investors it isn't going rogue. 'We have taken steps this week to begin pulling down our second half 2015 to manage our 2015 capacity growth ...' Kelly said."

31. On June 30 2015, the DOJ, recognizing the failure of its settlement of the American-US Airways merger, sent civil investigative demands ("CIDs") to a number of airlines. A spokesperson for DOJ, Emily Pierce, stated the Department was investigating "possible unlawful coordination" to limit capacity increases, and thereby keeping ticket prices high. CBS News reported that Delta, American and UA confirmed receiving CIDs from DOJ. Southwest confirmed receiving one as well.

X. CLASS ACTION ALLEGATIONS.

32. Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23(a) and (b) of the Federal Rules of Civil Procedure on behalf of the following Class (the "Class'):

> All persons and entities that purchased air passenger transportation services for flights within the United States directly from Defendants or any predecessor, subsidiary or affiliate thereof, at any time between July 2, 2011 and in all likelihood 2008 and the present. Excluded from the class are governmental entities, Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and their immediate families. Also excluded from the class are any judicial officers, their court staffs, as well as jury members and the immediate families of all such individuals.

33. Plaintiff does not know the exact number of members of the Class because such information is in the exclusive control of Defendants. Due to the nature of the trade and commerce involved, however, Plaintiff believes that Class members number at least in the hundreds of thousands and are sufficiently numerous and geographically dispersed throughout the United States so that joinder of all Class members is impracticable.

34. There are questions of law and fact which are common to the claims of Plaintiff and the Class, including, but not limited:

a. Whether Defendants engaged in a combination or conspiracy with their co-conspirators to fix, raise, maintain, and/or stabilize the prices for fares charged for air passenger transportation services;

b. Whether the purpose and/or effect of the acts and omissions alleged herein was to restrain trade, or to affect, fix, control, and/or maintain the prices for air passenger transportation services;

c. The existence and duration of the horizontal agreements alleged herein to fix, maintain, and/or stabilize the prices for air passenger transportation services;

d. Whether Defendants violated Sections 1 & 3 of the Sherman Act, 15 U.S.C. §§ 1 & 3;

e. Whether Defendants' agents, officers, employees, or representatives participated in correspondence and meetings in furtherance of the illegal conspiracy alleged herein, and, if so, whether such agents, officers, employees, or representatives were acting within the scope of their authority and in furtherance of Defendants' business interests;

f. Whether, and to what extent, the conduct of Defendants caused injury to Plaintiff and members of the Class, and, if so, the appropriate measure of damages; and

  g. Whether Plaintiff and members of the Class are entitled to injunctive relief to prevent the continuation or furtherance of the violation of Sections 1 & 3 of the Sherman Act.

35. Plaintiff's claims are typical of the claims of the members of the Class.

36. Plaintiff will fairly and adequately assert and protect the interests of the Class. Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the Class.

37. Plaintiff is represented by counsel competent and experienced in the prosecution of antitrust and class action litigation.

38. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members.

39. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because:

  a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

  b. The Class is readily definable and one for which records should exist in the files of Defendants.

  c. Prosecution as a class action will eliminate the possibility of repetitious litigation.

  d. Treatment as a class action will permit a large number of similarly situated persons to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would require.

e. Class treatment will permit the adjudication of relatively small claims by many Class members who otherwise could not afford to litigate an antitrust claim such as is asserted in this complaint on an individual basis.

40. This class action presents no difficulties of management that would preclude its maintenance as a class action.

## XI. COUNT I- VIOLATION OF SECTIONS 1 AND 3 OF THE SHERMAN ACT, 15 U.S.C. §§ 1 & 3.

41. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

42. Defendants and their co-conspirators engaged in a continuing contract, combination, and conspiracy to artificially fix, raise, maintain, and/or stabilize the prices of air passenger transportation services for flights within the United States in violation of Section 1 and 3 of the Sherman Act, 15 U.S.C. §§ 1 & 3.

43. Defendants and their co-conspirators agreed to, and did, in fact, restrain trade or commerce by fixing, raising, maintaining, and/or stabilizing at artificial and non-competitive levels, the prices of air passenger transportation services.

44. In formulating and effectuating their contract, combination or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, the purpose and effect of which were to artificially fix, raise, maintain and/or stabilize prices for air passenger transportation services.

45. The illegal combination and conspiracy alleged herein had the following effects, among others:

a. The prices charged by Defendants to, and paid by, Plaintiff and members of the Class for passenger fares were fixed, raised, maintained and/or stabilized at artificially high and non-competitive levels;

b. Plaintiff and members of the Class have been deprived of free and open competition in the purchase of air passenger transportation services;

c. Plaintiff and members of the Class have been required to pay more for air passenger transportation services than they would have paid in a competitive marketplace absent Defendants' price-fixing conspiracy; and

d. Competition in the sale of passenger air transportation has been restrained, suppressed or eliminated.

46. As a direct and proximate result of Defendants' conduct, Plaintiff and members of the Class have been injured and damaged in their business and property in an amount to be determined according to proof.

XII. PRAYER FOR RELIEF.

WHEREFORE, Plaintiff prays:

a. That the Court determine that this action may be maintained as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure be given to the members of the Class;

b. That the Court adjudges and decree that the contract, combination and conspiracy alleged herein is a per se unreasonable restraint of trade in violation of Sections 1 & 3 of the Sherman Act;

c. That the Court enter judgment against Defendants, jointly and severally, in favor of Plaintiff and the Class;

d. That the Court award Plaintiff and the Class treble damages;

e. That the Court award Plaintiff and the Class attorneys' fees and costs as well as pre-judgment and post-judgment interest as permitted by law;

f. That Defendants and their co-conspirators, their respective successors, assigns, parents, subsidiaries, affiliates and transferees, and their respective officers, directors, agents and employees, and all other persons acting or claiming to act on behalf of Defendants or their co-conspirators, or in concert with them, be permanently enjoined and restrained from, in any manner, directly or indirectly, continuing, maintain or renewing the combination, conspiracy, agreement, understanding or concert of action, or adopting any practice, plan, program or design having a similar purpose or affect in restraining competition; and

g. That the Court award Plaintiff and the Class such and other further relief as may be deemed necessary and appropriate, including divestiture of certain acquired assets by prior mergers to assure that air passenger transportation services are once again competitive.

XIII. JURY TRIAL DEMANDED.

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

/

/

/

/

/

DATED:  January 26, 2016                    THE ALIOTO LAW FIRM

_____
Thomas Paul Pier
Alioto Law Firm

*Attorney for Plaintiff*